FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2005 MAY -3 PM 1:52
LORETTA G. WHYTE
CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GREGORY P. FINNEY #210363** | **CIVIL ACTION** |
| **versus** | **NO. 05-0057** |
| **BURL CAIN, WARDEN** | **SECTION: "B" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).



Petitioner, Gregory P. Finney, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On April 6, 2000, he was convicted of simple possession of cocaine in violation of La.Rev.Stat.Ann. § 40:967 and battery on a police officer in violation of La.Rev.Stat.Ann. § 14:34.2.[2] On April 27, 2000, he was found to be a fourth offender and was sentenced as such on the drug conviction to a term of life imprisonment, without benefit of parole, probation, or suspension of sentence, with credit for time served. He was also sentenced on the battery conviction to a term of six months imprisonment in parish prison. It was ordered that the sentences run concurrently.[3] Petitioner's conviction and sentence were affirmed by the Louisiana Fourth Circuit Court of Appeal on September 5, 2001.[4] He then filed with the Louisiana Supreme Court an application for a writ of certiorari and review[5] which was denied on October 4, 2002.[6]

On or about September 1, 2003, petitioner filed with the state district court an application for post-conviction relief.[7] That application was denied on September 12, 2003.[8] Petitioner then filed

---

[2] State Rec., Vol. I of II, minute entry dated April 6, 2000; State Rec., Vol. I of II, jury verdict forms.

[3] State Rec., Vol. I of II, transcript of April 27, 2000, pp. 8-10; State Rec., Vol. I of II, minute entry dated April 27, 2000.

[4] State v. Finney, 798 So.2d 1051 (La. App. 4th Cir. 2001) (No. 2000-KA-2761); State Rec., Vol. I of II.

[5] State Rec., Vol. II of II.

[6] State v. Finney, 826 So.2d 1115 (La. 2002) (No. 2001-KO-2785); State Rec., Vol. I of II.

[7] Supplemental State Rec., Vol. I of I.

[8] Supplemental State Rec., Vol. I of I, Judgment dated September 12, 2003.

with the Louisiana Fourth Circuit Court of Appeal an application for a writ of review[9] which was denied on November 7, 2003.[10] He next filed with the Louisiana Supreme Court an application for a writ of review[11] which was denied on December 10, 2004.[12]

On December 16, 2004, petitioner filed this application for federal *habeas corpus* relief.[13] In support of his application, he claims:

1. Petitioner was denied the right to testify on his own behalf;
2. Petitioner received ineffective assistance of counsel; and
3. Petitioner's sentence is excessive.

The state concedes that petitioner's federal application is timely filed[14] and that he exhausted his remedies in state court.[15] Accordingly, his claims will be considered on the merits.

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively

---

[9] State Rec., Vol. II of II.

[10] State v. Finney, No. 2003-K-1648 (La. App. 4th Cir. Nov. 7, 2003) (unpublished); State Rec., Vol. II of II.

[11] State Rec., Vol. II of II.

[12] State *ex rel.* Finney v. State, 888 So.2d 830 (La. 2004) (No. 2003-KH-3457); Supplemental State Rec., Vol. I of I. While that application was pending, petitioner filed with the state district court a "Motion to Correct Unconstitutional Sentence." Supplemental State Rec., Vol. I of I. It is unclear whether a ruling has been issued regarding that motion.

[13] Rec. Doc. 2.

[14] Rec. Doc. 9, pp. 2-4.

[15] Rec. Doc. 9, p. 2.

overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal concisely summarized the facts of this case as follows:

> On October 18, 1999 Sergeant Brian Lampard and Officer Earl Razor of the New Orleans Police Department, Fifth District, were on proactive patrol in the 2200 block of Touro Street. As the officers were traveling riverbound on the one-way street, they observed a truck parked facing the wrong way; the defendant was standing outside of the truck. The officers observed the driver of the truck hand the defendant a white spherical object about the size of a tennis ball. As the defendant stepped away from the truck, he saw the approaching police officers in their marked unit, appeared startled, placed the object behind his back, and began to walk away. Because of their familiarity with the area and past experience, the officers believed they had interrupted a narcotics transaction. The officers decided to stop and conduct an investigation. Officer Razor exited the police car first and ordered the defendant to stop. The defendant disregarded this order and instead ran into the residence at 2204 Touro. Both police officers pursued the defendant into the shotgun-style house and saw him running into the bathroom. The officers attempted to enter the bathroom, which was very small, as they heard the toilet flush. Sergeant Lampard forced his way into the bathroom and saw the defendant with his hand in the toilet attempting to shove something inside. The defendant and Sergeant Lampard struggled as the officer attempted to pull the defendant away from the toilet. Finally, with the assistance of Officer Razor, Sergeant Lampard subdued the defendant. The sergeant then retrieved two pieces of crack cocaine from the toilet. The sergeant also removed the toilet from the floor but was unable to retrieve any more contraband. As the defendant was being removed from the residence, a glass crack pipe containing residue was discovered on a nightstand. The residue inside the white tube tested positive for cocaine. Sergeant Lampard stated that he sustained a broken bone in his hand which required surgery. The sergeant was unable to state at what point during the struggle he was injured.
>
> Defense counsel cross-examined Sergeant Lampard and Officer Razor at trial at length about their failure to stop the driver of the truck. Sergeant Lampard explained that he could not say whether the driver was selling drugs to the defendant or whether the defendant was attempting to sell drugs to the driver but the driver rejected the offer. The officers admitted that no full search of the residence was conducted. Officer Razor testified that no one else was present in the residence, and that he canvassed the backyard after the incident but did not see anyone.
>
> The defense called one witness, Stephanie Finney, the defendant's wife. She testified that she was washing clothes on the day of the incident. The defendant went

to the front door and then came back, stating that two police officers were sitting in front of the house. She claims that the two police officers, one white and one black, entered the house, and one of them pushed the defendant into the bathroom where he began beating him. According to Mrs. Finney, the black police officer simply stood next to her. Mrs. Finney then "eased" her way out of the back door. She further testified that the defendant was wearing only a shirt and underclothes at the time of his arrest. She also stated that they reported the beating of the defendant to O.M.I. Finally, Mrs. Finney testified that the two officers who entered her home were the same two who had previously arrested the defendant and had been harassing him.

The State called Officer Razor as a rebuttal witness. The officer denied that he stood next to Mrs. Finney or that he saw anyone inside the residence except the defendant.[16]

## Denial of Right to Testify

Petitioner claims that his constitutional rights were denied when the trial judge refused to allow petitioner to testify on his own behalf. As petitioner points out, "it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987).

In his federal application, petitioner alleges:

> In the instant case, petitioner told his trial lawyer that he wanted to testify because the officers who testified for the State were lying. Counsel informed petitioner that he could not put him on the stand because the judge stated to him earlier that he would not allow him to call petitioner to the stand.[17]

The Court notes that petitioner's claim that he wished to testify on his own behalf is not inherently implausible. Petitioner was convicted based on the testimony of Sergeant Brian Lampard and Officer Earl Razor. Petitioner contends that his proposed testimony would have undermined the

---

[16] State v. Finney, 798 So.2d 1051, 1052-53 (La. App. 4th Cir. 2001) (No. 2000-KA-2761); State Rec., Vol. I of II.

[17] Rec. Doc. 2, supporting memorandum, pp. 9-10.

officers' credibility by demonstrating their improper motive for the arrest. In his federal application, petitioner states:

> Petitioner would have testified that Officers Earl Razor and Brian Lampard had been harassing him because he refused to become their snitch. And that Officer Lampard gave petitioner a card with his phone number inscribed on the back. When petitioner refused to cooperate, the police arrested petitioner. Petitioner reported the harassment to OMI.
>
> Shortly thereafter, Officers Lampard and Razor kicked in the door of petitioner's house. They forced petitioner into the bathroom and started beating him. Because petitioner continued to tell them that he would not become their snitch, they arrested him for the instant charge.[18]

This Court is also given pause by the cursory manner in which the state courts handled petitioner's claim. When petitioner filed his state post-conviction application including this claim that the trial judge violated his rights by refusing to allow him to testify, he also filed a motion to recuse the trial judge from presiding over the post-conviction proceedings. The trial judge simply denied both the motion to recuse and the post-conviction application itself without assigning any reasons. It would have been helpful had the trial judge made clear the reason for denying petitioner's claim, such as by clarifying whether the claim was factually baseless or whether the ruling was based on a legal ground. However, the trial judge offered no such guidance. The Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court likewise denied petitioner's claim without explanation.

On the other hand, the state notes in its response that petitioner's claim finds no support in the record and is nothing more than "an unfounded allegation without any factual basis in support

---

[18] Rec. Doc. 2, supporting memorandum, p. 10.

whatsoever."[19] This Court has reviewed the trial transcript and, indeed, there is no mention of petitioner's purported desire to testify at trial. However, the mere fact that petitioner failed to stand up in open court and insist on testifying should not be dispositive of the issue. See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States Araujo, No. 02-20476, 2003 WL 22316865, at *1 (5th Cir. Oct. 9, 2003), cert. denied, ___ U.S. ___, 125 S.Ct. 292 (2004). Nevertheless, the Court cannot ignore the fact that petitioner has never presented anything whatsoever either to the state courts or to this Court to corroborate his bare allegations, such as an affidavit from his lawyer verifying that he had indeed been instructed by the trial judge that petitioner would not be allowed to testify or an affidavit from a third person who overheard either the judge's purported statement to the lawyer or the lawyer's purported statement to petitioner. Without more, petitioner's bare allegations are insufficient to trigger either further fact-finding by this Court or the granting of relief. As the United States Seventh Circuit Court of Appeals noted in a case in which a petitioner alleged that he had been denied the right to testify by his counsel:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...
>
> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly

---

[19] Rec. Doc. 9, p. 7.

> forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991).

In light of the foregoing considerations and the deference the AEDPA requires this Court to accord the state court's decision denying petitioner's claim, it is recommended that petitioner's claim be denied.

Ineffective Assistance of Counsel

In a related claim, petitioner next contends that his counsel was ineffective in failing to object to the judge's decision not to allow petitioner to testify. Again, the state courts rejected petitioner's claim without assigning reasons.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697. If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Id.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all

the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ..: counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

This claim faces the same obstacle as petitioner's earlier claim, i.e. petitioner's total lack of evidence to corroborate his underlying assertion that the trial judge took actions to prevent him from testifying. Without any evidence that the trial judge took such actions, petitioner cannot establish that his counsel performed deficiently in failing to object to the actions. The Court is mindful that,

to be entitled to relief, a petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). Petitioner has utterly failed to make such a showing.

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claim that his trial counsel was ineffective.

Excessive Sentence

Petitioner next contends that his life sentence as a fourth offender was excessive. On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> In the second assignment of error, the appellant contends that his life sentence as a fourth offender is excessive. The appellant suggests that, because all of his prior offenses were merely drug possession charges and that the amount in the instant case was small, he is not the most egregious of offenders. The appellant concedes that, because one of his prior convictions involved a drug offense punishable by more than five years, the life sentence he received was the statutorily-mandated minimum sentence.
>
> On April 27, 2000 when the defendant was sentenced, the trial court originally intended to delay the defendant's sentencing until the completion of his other case, involving the charge of possession with intent to distribute heroin, which at that time was set for trial on May 2, 2000. The disposition of that case is not before us. The defense made no objection to the court's decision to proceed with sentencing or otherwise suggest that the life sentence was inappropriate or that there was evidence he wished to present.
>
> Furthermore, contrary to the appellant's argument that he is not the most egregious offender, the record in this case indicates that the defendant engaged in an attempt, which was partially successful, to dispose of drugs. During this attempt to dispose of the evidence, the defendant committed a battery on a police officer.
>
> This Court thoroughly discussed the imposition of a life sentence on a drug user in State v. Carter, 99-0779, p. 20 (La.App. 4 Cir. 11/15/00), 773 So.2d 268, 281-282:

> Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La. 3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906 at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, writ denied, 95-3010 (La. 3/22/96), 669 So.2d 1223. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La. 2/5/99), 737 So.2d 741. A defendant must clearly and convincingly show that the mandatory minimum sentence under the Habitual Offender Law is unconstitutionally excessive. Johnson, 97-1906 at p. 11, 709 So.2d at 678. "[D]epartures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." Johnson, 97-1906 at p. 9, 709 So.2d at 677.

The Louisiana Supreme Court has repeatedly held that the Habitual Offender Law is constitutional and that the minimum sentences it imposes upon multiple offenders should be accorded great deference by the judiciary. However, courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution even though it falls within the statutory limits provided by the Legislature. State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339.

In Lindsey, the Supreme Court specifically held:

> ....To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
>
> > [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
> >
> > Id. [Citations omitted.]

> In making this determination, we held that "while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive." Id. This is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses. Id.
>
> In addition, we held that the trial judge must keep in mind the goals of the statute, which are to deter and punish recidivism, and, we instructed that the sentencing court's role is not to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana's constitution. Id. at 677.
>
> Finally, we held that if a trial judge finds clear and convincing evidence which justifies a downward departure, he is not free to sentence the defendant to whatever sentence he feels is appropriate under the circumstances, but must instead sentence the defendant to the longest sentence which is not constitutionally excessive. Id.
>
> The defendant fails to demonstrate in the case at bar by clear and convincing evidence how he qualifies to be treated exceptionally. It is totally irrelevant in this case that the defendant was charged in another division of criminal court with possession with intent to distribute heroin and that the same police officer is involved in both cases.[20]

To the extent petitioner is arguing that his sentence is excessive under Louisiana law, that claim is not cognizable in this federal proceeding. Federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this Court will not

[20] State v. Finney, 798 So.2d at 1055-57; State Rec., Vol. I of II.

review the state court's findings regarding the constitutionality of petitioner's sentence under state law.

Further, to the extent that petitioner is claiming that his sentence is excessive under the Eighth Amendment of the United States Constitution, his claim is without merit. In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

Accordingly, petitioner is not entitled to relief unless he can demonstrate that his sentence

is grossly disproportionate to the underlying offense by comparing the gravity of that offense against the severity of the sentence.  When evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses."  McGruder, 954 F.2d at 316.

In determining the proportionality of a sentence, this Court must look to Rummel v. Estelle, 445 U.S. 263 (1980), which "establishes a benchmark for disproportionate punishment under the Eighth Amendment."  Gonzales, 121 F.3d at 943.  In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses.  The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check.  The United States Fifth Circuit Court of Appeals has held:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate  punishments is an inherently subjective judgment, defying bright lines and neutral principles of law.  Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

Applying this "litmus test" and considering the Rummel finding that a life sentence was not excessive when imposed for a nonviolent property offense where the habitual offender had two prior nonviolent property offenses, this Court must conclude that petitioner's sentence as a fourth offender to a term of life imprisonment, which was the mandatory sentence under Louisiana law, was not

grossly disproportionate in light of petitioner's criminal record, i.e. his current conviction for possession of cocaine and three prior drug convictions (two for possession of cocaine and one for possession of phencyclidine).[21] In that the sentence is not grossly disproportionate, this Court's "inquiry is finished." Gonzales, 121 F.3d at 942. Because petitioner's sentence is not so excessive as to violate the United States Constitution, his claim that his sentence is excessive must fail.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this second day of May, 2005.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

[21] State Rec., Vol. I of II, multiple bill of information.